IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PERCY CHAPMAN, JANENE CHAPMAN, COLLEEN RANDOLPH, and ANN MARIE BOYCE, individually and on behalf of all others similarly situated, | ) | CIVIL ACTION |
| Plaintiffs, | ) | CLASS ACTION |
| v. | ) | No. |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | ) | JURY TRIAL DEMANDED. |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

1. Representative Plaintiffs Colleen Randolph ("Randolph"), Marie Ann Boyce ("Boyce"), and Percy and Janene Chapman (the "Chapmans") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby file this Class Action Complaint against Defendant Manufacturers and Traders Trust Company a/k/a M & T Bank ("M&T" or the "Bank") and allege as follows:

## I. INTRODUCTION

2. Plaintiffs bring this consumer class action on behalf of similarly situated consumers, seeking monetary, injunctive and declaratory relief through the Uniform Commercial Code ("UCC") as adopted in New York and Pennsylvania both, independently, and in *pari materia* with, as applicable, the New York Motor Vehicle Retail Installment Sales Act ("MVRISA"), the New York General Obligation Law, and the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"), respectively, necessitated by the Bank's conduct in foreclosing on vehicle loans and repossessing and reselling the financed vehicles of class members. Principally, the Bank has failed to comply with the strict statutory requirements for statutorily

required post-repossession consumer disclosure notices which must be sent to vehicle owners after the repossession of a motor vehicle.

## II. PARTIES

3. Colleen Randolph is an adult individual who resides at 4992 West Ridge Rd., Rochester, NY 14625 and was a citizen of New York. Colleen Randolph represents the New York Notice of Repossession Class.

4. Ann Marie Boyce is an adult individual who resides at 34 Woodrow Rd., Batavia, NY 14020 is a citizen of New York. Ann Marie Boyce also represents the New York Notice of Repossession Class.

5. Percy and Janene Chapman are married adult individuals who reside at 408 Sisca St., Sharpsburg, PA 15215 and are citizens of Pennsylvania. The Chapmans represent the Pennsylvania Notice of Repossession Class, the Post-Sale Subclass, and the Repossession Broker Subclass.

6. Defendant Manufacturers and Traders Trust Company, a/k/a M&T Bank (hereafter "M&T" or "the Bank"), is a bank with branches located throughout several states, including New York and Pennsylvania.

7. The Bank's headquarters is located at One M&T Plaza, Buffalo, New York 14203.

8. M&T holds itself out on its website as "a regional financial services company with more than $120 billion in assets. We provide banking, insurance, investments, mortgage and commercial financial services through more than 750 branches, 1800 ATMs, and a variety of online and mobile services." (https://www.mtb.com/about-mt/our-organization?WCMITEMID=2145) The Bank is one of the 20 largest US headquartered commercial banks.

9.     The Bank is a corporation organized under the laws of the State of New York with its principal place of business located in the State of New York, which conducts business at numerous locations throughout the Southern District of New York, including branches at:

(1)     350 Park Ave., 6th Floor, New York, New York 10022;
(2)     397 First Ave., New York, NY 10010;
(3)     95 Madison Ave., New York, NY 10016;
(4)     11 West 42nd St., New York, NY 10036;
(5)     830 Eighth Ave., New York, NY 10019;
(6)     401 East 55th St., New York, NY 10022; and,
(7)     310 Lenox Ave., New York, NY 10027.

10.     At all relevant times, the Bank was the holder and secured party, by way of assignment, sale, and/or merger, of the consumer retail installment sales contracts secured by the vehicles of the Plaintiffs and all Class Members.

## III. JURISDICTION AND VENUE

11.     Jurisdiction exists under 28 USC §1332(d) "CAFA" because at least one class member is a citizen of a different state than the Defendant, and the matter in controversy exceeds the sum or value of $5,000,000.

12.     This Court has personal jurisdiction over M&T because the Bank is incorporated and/or headquartered in New York and/or the Notices of Repossession and Post-Sale Notices sent to Plaintiffs and the putative class members were drafted in, printed in, and/or mailed from the state of New York by the Bank and/or the other actions of the Bank averred in this Complaint took place in the state of New York.

13.     M&T has employees and maintains branch offices and conducts extensive, continuous and systematic business within this District. Defendant contacts with this District are sufficient to subject it to personal jurisdiction if this District were a separate state, rendering

Defendant a resident of this District within the meaning of 28 U.S.C. §1391(d). Thus, venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1).

14. There is currently a companion case pending in the United States District Court for the Eastern District of Pennsylvania, *Edward R. Flynn, et. al. v Manufacturers and Traders Trust Company a/k/a M&T Bank*, 17-cv-4806-WB. The *Flynn* case is a Pennsylvania class action involving allegations of violations of the Pennsylvania UCC, independently, and the UCC *in pari materia* with the Pennsylvania MVSFA. The *Flynn* case has been pending since having been filed in state court on September 22, 2017 and subsequently removed to the Eastern District of Pennsylvania.[1]

15. Because the Defendant is headquartered in New York, conducts business in the Southern District, and all Plaintiffs were harmed by a variety of actions which occurred in New York, the place of the Bank's incorporation. Plaintiffs Boyce and Randolph are citizens of New York who bring claims on behalf of New York residents. Percy and Janene Chapman are Pennsylvania citizens who bring claims on behalf of Pennsylvania residents.

## IV. FACTUAL BACKGROUND

16. The Bank, as secured creditor by assignment of a retail installment contract entered into in New York, caused Boyce's vehicle to be repossessed in New York in May or June of 2014 and Colleen Randolph's vehicle to be repossessed in New York in late March of 2017.

17. The Bank, as secured creditor by assignment of a retail installment contract entered into in Pennsylvania, caused the Chapmans' vehicle to be repossessed in Pennsylvania in July of 2016.

[1] In light of the similarities of facts of all claims and the relative uniformity of the statutes in question, and the filing of the *Flynn* case which asserts similar claims, Plaintiffs request that this action be transferred and consolidated with the *Flynn* case for purposes of judicial efficiency. Plaintiff's counsel will attempt to obtain the consent of the Bank to effectuate a prompt transfer.

18. The Bank sold or caused to be sold each of the Representative Plaintiffs' vehicles.

19. After it sold the Chapmans' vehicle, the Bank did not send a separately addressed Post-Sale Notice to each co-borrower and/or did not send the notice by registered or certified mail as required by the UCC, independently, and the UCC and MVSFA in *pari materia* as set forth below.

20. The Representative Plaintiffs and their counsel do not have a copy of the Notice of Repossession nor Post-Sale Notices relating to the repossession of their vehicles; the retail installment sales contracts at issue; the payment ledger identifying all repossession/sale related expenses which the Bank actually incurred for each account, and/or the contracts and agreements which the Bank had with all repossessors, repossession brokers, and/or auction vendors in New York and Pennsylvania during the class periods; and/or copies of all of the Bank's policies and procedures at issue. These documents are within the possession of the Defendant and will be obtained via Rule 26(a) disclosures and/or discovery.

## V. THE BANK'S INNACCURATE DISCLOSURES IN THE NOTICES OF REPOSSESION

### Storage Expenses and a "Prepare/Repair" Fees

21. In connection with these repossessions, the Bank sent to the Representative Plaintiffs and Class Members a Notice of Repossession, substantively the same as a Notice of Repossession attached as **Exhibit 1**, which included amount allegedly paid by the Bank for an "Expense of storing the Vehicle" ("Storage Expense") and an "Expense of preparing/repairing the Vehicle for sale." ("Prepare/Repair Fee").

22. The Bank's representation regarding the "Prepare/Repair Fees" and Storage Expenses which it made in the Notices of Repossession used during the Class Period were systematically ***false*** because the Bank did not pay, incur, and was not otherwise obligated to pay

nor incur any amounts as stated in the Notices of Repossession for the "Expense of storing the Vehicle" or "Expense of preparing/repairing the Vehicle for sale."

23. Under the ruse of an "expense," the Bank assessed Storage Expenses and Prepare/Repair Fees which had the effect of artificially inflating the Redemption Amount in the Notices of Repossession the Bank sent to Plaintiffs and Class Members. The Bank contrived use of the bogus Storage Expenses and the Prepare/Repair Fees to generate additional revenue from its borrowers who elected to reinstate their loan or to redeem their vehicle, to save money at the expense of its third party repossessors, repossession brokers, and auctions, and/or to dissuade borrowers from redeeming the vehicle and/or reinstating their loan.

24. For those class members who elected to reinstate their loan or redeem their vehicle, the Bank often collected these improper fees which it paid to itself, in whole or in part, or which it paid to third parties, acting as a collection agent for repossessors, repossession brokers, or auctions.

**Storage Expenses**

25. At all relevant times during the Class Period, as a matter of a uniform policy, pattern, and practice in New York and Pennsylvania alike, the Bank had a secret, sweet-heart agreement with various third party repossessors and repossession brokers and auctions under which the Bank would be insulated from any storage expense associated with any repossession of Class Members' vehicles for the approximately 10-15 days after repossession. Only after this grace period, the Bank would be charged a daily storage fee per day which was significantly ***less*** than the amount stated in the Notice of Repossession which the Bank sent to the Representative Plaintiffs and Class Members.

26. At all relevant times during the Class Period, as a matter of a uniform policy,

pattern, and practice in New York and Pennsylvania alike, though the Bank stated a Storage Expense in each Notices of Repossession the Bank sent to Plaintiffs and Class Members, the Bank did not incur any Storage Expense on the date that the Bank sent the Notice of Repossession or thereafter because the Bank arranged to transport the repossessed vehicle from the repossessor's lot before any storage expense would begin to be incurred by the Bank.

27. The Bank, however, expressly permitted its repossessors, repossession brokers, and/or auctions to charge its borrowers a Storage Expense if he/she/they elected to redeem their repossessed vehicles or to reinstate their loan. *See*, Affidavits of Karen Trice, Donald Dayton, and and Douglas Miller. **Exhibits 2-A**, **2-B**, and **2-C**.

**Prepare/Repair Fee**

28. At all relevant times during the Class Period, as a matter of a uniform policy, pattern, and practice in New York and Pennsylvania alike, on the date the Bank sent a Notice of Repossession to Plaintiffs and Class Members listing a Prepare/Repair Fee, M&T had not authorized any third party to perform repairs on any of the Class Member's repossessed vehicle and similarly did not incur any repair-related expenditure.

29. Also, as a matter of a uniform policy and business practice, on the date the Bank sent a Notice of Repossession to Plaintiffs and Class Members listing a Prepare/Repair Fee, M&T had not authorized any third party to make any "preparation" for the sale of the repossessed vehicles by any third party for which it incurred any expenditure.

30. Indeed, at the time of the sending of the Notice of Repossession listing a Prepare/Repair Fee, the Bank did not

know for certain whether or not the borrower would redeem their vehicle or reinstate their loan making any "preparations" for sale unnecessary.

31. Also, as a matter of a uniform policy, pattern, and practice in New York and Pennsylvania alike, the Bank also did not incur any expense which it paid to any third party associated with the repair of the repossessed vehicle or to prepare it for sale as of the date of the sending of the Notice of Repossession though, in each such Notice of Repossession sent during the Class Period, the Bank stated that it incurred such an "expense."

**Redemption Fee, Personal Property Fee, and Administrative Fee**

32. Also, as a matter of a uniform policy, pattern, and practice in New York and Pennsylvania alike, all Class Members who redeemed their vehicles, reinstated their loans, or simply recovered their possessions left in the repossessed vehicle were forced to pay a Redemption Fee, a Personal Property Fee, and/or an Administrative Fee as a further precondition to recover their repossessed vehicle and/or to reacquire their personal possessions.

33. As a matter of a standardized policy and practice, although the Bank did not directly charge a Redemption Fee, a Personal Property Fee, or an Administrative Fee, at all relevant times, it had actual knowledge that these were not bona fide expenses incurred by it. Never paying these fees itself, the Bank authorized the assessment of these fees by third party repossessors, repossession brokers, and auctions and often facilitated the collection of these fees by its borrowers.

**Bank's Representation in Retail Instalment Sales Contracts**

34. In all instances, Representative Class Members and Class Members in New York and Pennsylvania executed a retail instalment contract in which the Bank obligated itself to charge only for "expenses" – meaning actual charges which the Bank paid in relation to repossessions. As seen above, it failed to limit the amounts it showed on its Notices of Repossession to its actual expenses.

**Bank's Employment of Un-licensed Repossession Broker(s) in Pennsylvania**

35. The Bank contracted with at least one Repossession Broker, Millennium Capital Recovery Corporation ("MCRC"), who repossessed or subcontracted the repossession of vehicles in Pennsylvania who was neither registered to conduct business in Pennsylvania nor possessed the requisite licensed as a repossession broker. Millennium Capital and Recovery Corporation improperly facilitated the repossession of Pennsylvania Class Members (including Edward Flynn and Catherine Hosick Representative Plaintiffs in the *Flynn* action) and Percy and Janene Chapman.

**Bank's False Certifications to Government Officials**

36. For all Class members who did not redeem their vehicle the Bank or its agent submitted a New York Department of Motor Vehicle Form 950 or Pennsylvania Department of Transportation MV-217A form ("retitling forms"), to obtain a new title to each repossessed vehicle. Exemplars of these forms are attached as **Exhibit 3-A and 3-B**.

37. In executing and submitting a retitling form, the Bank (directly or through its authorized agent) routinely certified that it had "complied with … any applicable laws in the state where the vehicle was repossessed" (NY DMV 950) or that it had "complied with all applicable laws and regulations of Pennsylvania" (MV-217A).

38. These certifications were false for the reasons described above.

## V. DEFINITIONS

39. **Administrative Fee**: The term "Administrative Fee" refers to a fee which the Bank, a third party repossessor, a recovery management servicer, and/or or the auction selling the repossessed vehicle, charged to the vehicle owner as a precondition to Reinstatement and/or Redemption.

40. **Debtor**: The term "Debtor" is "A: (1) person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor …" *See*, N.Y. U.C.C. Law §9-102 and 13 Pa.C.S. §9102.

41. **Expense**: "An expenditure of money, time, labor or resources to accomplish a result. *Black's Law Dictionary Abridged*, 7th Ed., p. 473.

42. **Form RISC**: The term "Form RISC" refers to a standardized retail installment sale contract routinely used by the Bank. Plaintiffs and class members executed RISC's which included provision(s) that that the borrower would be obligated to pay only for reasonable, necessary, and/or actually incurred expenses to retake, hold, prepare for disposition, process and/or dispose of the repossessed vehicle.

43. **Good Faith**: The term "Good Faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." N.Y. U.C.C. Law §9-102; 13 Pa.C.S. §1201.

44. **Motor Vehicle**: Except as otherwise stated, the term "Motor Vehicle" means a device in which, upon which or by which a person or property is or may be transported or drawn upon a public highway and including an automobile, a truck, a sports utility vehicle, a van, a minivan, a camper, a recreational vehicle, a motorcycle, or a truck. For purposes of this Complaint, the term is not intended to include a semitrailer or manufactured home.

45. **Notice of Repossession**: The term "Notice of Repossession" refers to a post-repossession consumer disclosure notice and has the same meaning as the term "notification of disposition," in N.Y. U.C.C. Law §§9-611, 9-613, and 9-614; 13 Pa.C.S. §§9611, 9613, and 9614. The Bank used standardized, uniform forms throughout the class periods. The only information modified in these disclosure notices (similar to any other form used by the Bank) which is unique to each customer are typically the amounts, personally identifiable information, unique data

pertaining to the repossessed vehicle, and the customer's loan information. Plaintiffs believe that the Notices of Repossession used by the Bank in New York are the same or substantially similar forms as the Notices of Repossession used by the Bank in Pennsylvania during equivalent time periods.

46.     **Obligation of Good Faith**: The term "Obligation of Good Faith" refers to the requirement that "[e]very contract or duty within this act imposes an obligation of good faith in its performance and enforcement." N.Y. U.C.C. Law §1-304; 13 Pa.C.S. §1304.

47.     **Obligor**: The term "Obligor" refers to a person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral: (1) owes payment or other performance of the obligation; (2) has provided property other than the collateral to secure payment or other performance of the obligation; or (3) is otherwise accountable in whole or in part for payment or other performance of the obligation. The term does not include any issuer or nominated person under a letter of credit. See, N.Y. U.C.C. Law §9-102; 13 Pa.C.S. §9102.

48.     **Personal Property Fee**: The term "Personal Property Fee" refers to a fee which the Bank, a third party repossessor, a recovery management servicer, and/or or the auction would assess a borrower as a precondition to regain possession of the borrower(s)' personal belongings left/contained in the repossessed vehicle.

49.     **Post-Sale Notice**: The term "Post-Sale Notice" has the same meaning as the term "Explanation of Calculation of Surplus or Deficiency" in N.Y. U.C.C. Law §9-616 and 13 Pa.C.S. §9616.  The only information modified in this notice which unique to each customer consists of amounts, personally identifiable information, unique data pertaining to the repossessed vehicle, the customer's loan information, and dates.

50. **Prepare/Repair Fee**: The term "Prepare/Repair Fee" is an amount (generally $200.00) typically referenced in the Bank's form Notices of Repossession as an "Expense of preparing/repairing the Vehicle for sale," "Sale preparation expenses," or similar language. This is a purported expense incurred by the Bank.

51. **Redeem/Redemption:** Unless stated otherwise, the terms "Redeem" and "Redemption" mean a "buy back" of the repossessed vehicle by terminating the contract upon payment of the Redemption Amount.

52. **Redemption Amount**: The term "Redemption Amount" is the amount a debtor, obligor, or co-obligor would need to pay to buy back his/her repossessed vehicle. This is defined by the UCC at N.Y. U.C.C. Law §9-623(b) and 13 Pa.C.S. §9623(b) as the "(1) fulfillment of all obligations secured by the collateral; and, (2) the reasonable expenses…described in Section 9-615(a)(1)." N.Y. U.C.C. Law §9-615(a)(1) and 13 Pa.C.S. §9615(a)(1) describe "reasonable ***expenses*** of retaking, holding, preparing for disposition, processing and disposing … ***incurred*** by the secured party." (Emphasis added).

53. **Redemption Fee**: The term "Redemption Fee" refers to a fee which the Bank, a third party repossessor, a recovery management servicer, and/or or the auction would assess a borrower(s) as a precondition redeem his/her/their repossessed vehicle.

54. **Reinstatement**: The term "Reinstatement" occurs when a borrower pays some or all of the past due installments plus late charges, costs of suit, and actual incurred costs of retaking, repairing and storing the vehicle in order to bring the contract current, to reacquire possession of the repossessed vehicle, and to resume making installment payments.

55. **Repossession Broker**: The terms "Repossession Broker" means, pursuant to 12 Pa.C.S.§§6202 and 6211(a), a Collector-Repossessor who, as an independent contractor

and not as a regular employee of an instalment seller or a sales finance company, acts as a broker to arrange for the repossession of motor vehicles that are the subject of installment sale contracts."

56. **Schumer Box**: The term "Schumer box" is a table with a standardized format that discloses the rates, fees, terms and conditions of a credit card or other lending agreement terms as required under the federal Truth in Lending Act (TILA).

57. **Storage Expense**: The term "Storage Expense" is listed in the Notices of Repossession and/or Post-Sale Notices as "Expense of storing the Vehicle." It is an amount (generally calculated on a daily basis) purportedly paid by the Bank for the storage of the repossessed vehicle.

## VI. GOVERNING LAW

### In Pennsylvania, the UCC and MVSFA must be read *in pari materia*

58. Repossessors of vehicles, such as M&T, are required to comply with both the UCC and the UCC *in pari materia* with the MVSFA, 12 Pa.C.S.A. §6201, et seq. *Industrial Valley Bank & Trust Co. v. Nash,* 349 Pa. Super. 27, 502 A.2d 1254 (1985); *Coy v. Ford Motor Credit Co.*, 422 Pa. Super. 76, 79, 618 A.2d 1024, 1025 (1993); *Cosgrove v. Citizens Auto. Finance, Inc.*, 2011 WL 3740809 at *1 (E.D. Pa. 2011); *Whiteman v. Degnan Chevrolet, Inc.*, 217 Pa. Super 424, 272 A.2d 244 (1970); *McCall v. Drive Financial Services, L.P.*, et al., January Term, 5 (2009). **Exhibit 4**.

59. "Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa. C.S. §1932(a). "Statutes in pari materia shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932(b). Both the UCC and MVSFA set forth notice requirements for secured parties who repossess other than by legal

process. Therefore, these statutes clearly relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

60. Further, Comment 9 to 13 Pa.C.S.A.§9620 states:

> Applicability of Other Law. This section does not purport to regulate all aspects of the transaction by which a secured party may become the owner of collateral previously owned by the debtor. For example, a secured party's acceptance of a motor vehicle in satisfaction of secured obligations may require compliance with the applicable motor vehicle certificate-of-title law. State legislatures should conform those laws so that they mesh well with this section and Section 9-610, and courts should construe those laws and this section harmoniously. A secured party's acceptance of collateral in the possession of the debtor also may implicate statutes dealing with a seller's retention of possession of goods sold.

Comment 9 specifically directs courts to construe UCC provisions "harmoniously," i.e. in pari materia, with other laws that regulate secured transactions. The MVSFA is such a law.

**In New York, the UCC, the MVRISA, and the**
**General Obligation Law must be read *in pari materia***

61. Repossessors of vehicles, such as M&T, are required to comply with both the UCC and the UCC *in pari materia* with the MVRISA, N.Y. Pers. Prop. Law §301, *et. seq*., including but not limited to N.Y. Pers. Prop. Law §316 and the General Obligation Law, N.Y. Gen. Oblig. Law §1-101, *et. seq*., including but not limited to N.Y. Gen. Oblig. Law §7-401. The phrase *in pari materia* is applied to statutes or general laws, usually enacted at different times but with reference to the same subject matter. N.Y. Stat. Law §221.

62. Under New York law, statutes which relate to the same or to cognate subjects are in *pari materia* and must be construed together unless a contrary intent is clearly expressed by the Legislature. *In re Petrocci*, 370 B.R. 489, 501 (Bankr. N.D.N.Y. 2007); *Plato's Cave Corp. v. State Liquor Authority,* 68 N.Y.2d 791, 793, 506 N.Y.S.2d 856, 498 N.E.2d 420 (1986); *Meegan v. Progressive Ins. Co.,* 43 A.D.3d 182, 838 N.Y.S.2d 748, 752–53 (4th Dep't 2007); *Matter of Cook v. Carmen S. Pariso, Inc.*, 287 A.D.2d 208, 215, 734 N.Y.S.2d 753 (4th Dep't 2001). Thus,

"statutes in pari materia are to be construed together and as intended to fit into existing laws on the same subject unless a different purpose is clearly shown." *Lower Manhattan Loft Tenants v. Loft Bd.*, 66 N.Y.2d 298, 304, 496 N.Y.S.2d 979, 487 N.E.2d 889 (1985).

63. The UCC, the MVRISA, including but not limited to N.Y. Pers. Prop. Law §316, and N.Y. Gen. Oblig. Law §7-401 set forth notice requirements for secured parties who repossess other than by legal process. Therefore, these statutes relate to the same or to cognate subjects and are therefore in *pari materia* and must be construed together as one statute. *In re Petrocci*, 370 B.R. 489, 501 (Bankr. N.D.N.Y. 2007); *See also*, *Gen. Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252, 260–61 (W.D.N.Y. 2007), *aff'd sub nom. In re Peaslee*, 585 F.3d 53 (2d Cir. 2009).

64. Further, Comment 9 to N.Y. U.C.C. Law §9-620 states:

> Applicability of Other Law. This section does not purport to regulate all aspects of the transaction by which a secured party may become the owner of collateral previously owned by the debtor. For example, a secured party's acceptance of a motor vehicle in satisfaction of secured obligations may require compliance with the applicable motor vehicle certificate-of-title law. State legislatures should conform those laws so that they mesh well with this section and Section 9-610, and courts should construe those laws and this section harmoniously. A secured party's acceptance of collateral in the possession of the debtor also may implicate statutes dealing with a seller's retention of possession of goods sold.

Comment 9 specifically directs courts to construe UCC provisions "harmoniously," i.e. in pari materia, with other laws that regulate secured transactions. The MVRISA, including but not limited to N.Y. Pers. Prop. Law §316, and the General Obligation Law, including but not limited to N.Y. Gen. Oblig. Law §7-401, are such laws.

## VI. STATUTORY VIOLATIONS

### The UCC Requires Accurate Disclosures in Notices of Repossession

65. After foreclosing on a vehicle loan and then repossessing a vehicle, the Bank had a statutory obligation to provide a "reasonable authenticated notification of disposition" (aka. "Notice of Repossession"). N.Y. U.C.C. Law §9-611(b) and 13 Pa.C.S. §9611(b).

66. N.Y. U.C.C. Law §9-614 and 13 Pa.C.S. §9614 set forth what information must be included in a consumer Notice of Repossession. A Notice of Repossession that lacks **any** of the required information is ***insufficient as a matter of law***. N.Y. U.C.C. Law §9-614, Comment 2 and 13 Pa.C.S. §9614, Comment 2.

67. N.Y. U.C.C. Law §9-623(b) and 13 Pa.C.S. §9623(b) of the UCC state:

> "...[t]o redeem collateral, a person shall tender ... (2) the reasonable expenses and attorney fees described in section 9-615(a)(1)."

68. The Notices of Repossession which the Bank sent or caused to be sent to Plaintiffs and Class Members violated the UCC because, *inter alia*, it listed fake (i.e. un-incurred in-part or in-whole) expenses and, thereby, misstated the amount required to redeem. Thus, the Bank's Notices of Repossession, which claim to inform the vehicle owner how much he/she will have to tender to Redeem the vehicle, can only include in the amount required to redeem those expenses listed in N.Y. U.C.C. Law §9-615(a)(1) and 13 Pa.C.S. §9615(a)(1).

69. N.Y. U.C.C. Law §9-615(a)(1) and 13 Pa.C.S. §9615(a)(1) limit these expenses to:

> "the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing...incurred by the secured party." (emphasis added).

70. The "safe harbor" notice language set forth in N.Y. U.C.C. Law 9-614(c) and 13 Pa.C.S. §9614(3) also makes clear that only expenses ***actually incurred*** **by the secured party** can be passed on to the vehicle owner:

> "You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including **our expenses**." (emphasis added).

**Inclusion of these un-incurred "expenses" in the Notices of Repossession, and failure to disclose other fees, violated the UCC in *pari materia* with the MVSFA and MVRISA**

71. The Notice of Repossession improperly included expenses in the redemption amount such as the "Expense of storing the Vehicle" and the "Expense of preparing/repairing the Vehicle for sale," which do not represent costs that the Bank *actually* incurred, and which artificially inflated the stated amount required to redeem.

72. The Notices failed to disclose the Personal Property Fees, Redemption Fees, and Administrative Fees. These undisclosed fees do not constitute "the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing" of the collateral incurred by the Bank, as required by N.Y. U.C.C. Law §9-615(a)(1) and 13 Pa.C.S. §9615(a)(1). N.Y. U.C.C. Law §9-623(b)(2) and 13 Pa.C.S. §9623(b)(2) allow a debtor to redeem his vehicle by tendering, *inter alia*, the reasonable expenses described in N.Y. U.C.C. Law §9-615(a)(1) and 624(b)(2), and 13 Pa.C.S. §9615(a)(1) and §9623(b)(2).

73. These purported expenses are also not "reasonable" as they were, as a matter of course, never incurred by the Bank and were also not actual, necessary, or reasonable as required by the MVSFA – 12 Pa.C.S. §6256(c)(2) and likely the form retail installment sales contracts used by the Bank in New York and Pennslvania.

74. Accordingly the Notices of Repossession failed to comply with the UCC by failing to limit the disclosure notice to the *actual expenses incurred*, which violates the N.Y. U.C.C. §§9-614(a)(2), 9-615(a)(1) and 9-623(b), independently, and in *pari materia* with the MVRISA §316 and NY General Obligation Law §7-401(2) – both requiring a written notice of the right to redeem and the dollar amount necessary to redeem). This practice also violates the Pa. UCC,

independently, 13 Pa.C.S. §§9614(1)(ii), 9615(a)(1) and 9623(b), and in *pari materia* with the MVSFA [12 Pa.C.S. §6254(c)(2)] which also requires an itemized statement of amount required to redeem.

**Post-Sale Notice Claims**
**(Pennsylvania Class Members Only)**

75. 13 Pa.C.S. §9616 states that after a consumer's vehicle is sold, the holder is required to send to the debtor (in this case the former owner of the vehicle) an "Explanation of Surplus or Deficiency" (a Post-Sale Notice). This must be sent "after the disposition and (A) before or when the secured party accounts to the debtor and pays any surplus or first makes written demand on the consumer obligor after the disposition for payment of the deficiency; and (B) within fourteen days after receipt of a request."

76. In the event that the secured loan has two or more obligors and there is a deficiency balance purportedly owing, then the Post-Sale notice must, in accordance with 13 Pa.C.S. §9616(a) and (b), be sent individually to each of the borrowers. Notwithstanding their use of the singular "debtor" and singular "consumer obligor," 13 Pa.C.S. §9616(b)(1) requires a notice to be sent separately to each debtor and consumer obligor who is liable for a deficiency. This conclusion is based on the application of 1 Pa.C.S. §1902, which provides that for purposes of statutory construction words in the singular number include the plural, and in the plural number include the singular.

77. As a matter of policy and practice of noncompliance, the Bank did not send Post-Sale Notices individually to each co-borrower on a loan, in violation of 13 Pa.C.S. §9616.

78. For Plaintiffs Chapman and Pennsylvania Class Members who were sent a Post-Sale Notice in Pennsylvania any time after December 1, 2014,[2] the MVSFA requires that within 30 days after the sale of a repossessed vehicle, the "installment seller or holder **shall** deliver in person or send by registered or certified mail to the last known address of the buyer a deficiency notice…" 12 Pa.C.S.A.§6261(d).

79. As a matter of policy and practice of non-compliance, the Bank did not deliver in person or send the Post-Sale Notices or by registered or certified mail, in violation of the UCC, independently, and the UCC and MVSFA in *pari materia*, and/or 13 Pa.C.S. §9616 by failing to send a separately addressed Post-Sale Notice to each of the debtor/consumer obligors.

## M&T VIOLATED ITS OBLIGATIONS OF GOOD FAITH AND COMMERCIAL REASONABLENESS

### M&T's Obligation of Good Faith and Commercial Reasonableness Requirement

80. There are two overarching principles that must guide a secured creditor's conduct in foreclosing on a vehicle loan and repossessing and selling a financed vehicle. First, all aspects of its conduct must be "commercially reasonable." Second, regardless of whether there is ultimately a reinstatement of the loan or a redemption or sale of the repossessed vehicle, the Bank must fulfill its obligation of good faith: to conduct itself honestly and that it observes reasonable commercial standards of fair dealing. *See*, N.Y. U.C.C. Law §9-610(b), §9-102, and §1-304 and 13 Pa.C.S. §9610(b), §1201, and §1304.

81. M&T's statutory violations described above were not commercially reasonable, in violation of one or more statutes, regulations, and/or the Bank's self-imposed duties or obligations.

[2] Effective December 1, 2014, the MVSFA was recodified at 12 Pa.C.S.A. §6201, *et seq*., in part setting forth the new requirement that Post-Sale Notices be sent in person or by registered or certified mail.

They were also violations of the Bank's Obligation of Good Faith. Other actions and omissions of M&T as described herein were also commercially unreasonable and/or a violation of the Bank's Obligation of Good Faith.

**M&T Breached its Standard of Care**

82. M&T Bank Corporation, the Bank's parent, has employed a standard of care which also applies to the Bank and is set forth in its *Code of Business Conduct and Ethics* (**Exhibit 5**) which states, *inter alia*, as follows:

> **Introduction.** This Code, together with hose policies and procedures, do not cover every issue that may arise, but they set out basic principles to guide M&T Bank Corporation and/or any direct or indirect subsidiaries thereof and all employees, officers, directors, advisors (including members of any advisory councils and committees), agents, representatives and consultants of M & T (collectively, "M&T Personnel"; individually, "you"). ... All M&T Personnel must conduct themselves in accordance with the Code and seek to avoid conduct that could give rise to the appearance of impropriety.
>
> Section 1. **Compliance with Laws, Rules and Regulations.** "Obeying the law, both in letter and in spirit, is the foundation on which M & T's ethical standards are built."
>
> Section 5. **Competition and Fair Dealing.** "M&T Personnel should endeavor to respect the rights of and deal fairly with M&T customers....M&T Personnel should not take unfair advantage of...anyone through... concealment..."
>
> Section 8. **Record Keeping.** M & T requires honest and accurate recording and reporting of information. ... All of M & T's books, records, accounts and financial statements must be maintained in reasonable detail, must appropriately reflect M & T's transactions, and must conform both to applicable legal requirements and to M&T's system of internal controls.

83. This standard of care was in effect at all relevant times and is what M&T has undertaken as its internal benchmark for what it deems to be commercially reasonable conduct, applicable to its servicing of the vehicle loans of class members. M&T's statutory violations described above, and its actions and omissions described below, violated this standard of care,

which violation in itself is commercially unreasonable and/or a violation of M&T's Obligation of Good Faith.

**The Retitling Process**

84. The New York and Pennsylvania governments would not have issued new titles to the Bank for the repossessed vehicles if they had known that the Bank made false certifications on the MV950 and MV-217A forms.

85. The improper transfer of titles resulted in property damage in the form of the loss of the use of the vehicle and loss of ownership for each and every Class Member whose vehicle title was transferred through the use of such a retitling form.

86. The use of false certifications on these retitling forms to retitle repossessed vehicles was commercially unreasonable in violation of N.Y. U.C.C. Law §9-610(b) and 13 Pa.C.S. §9610(b) and/or in violation of the Bank's Obligation of Good Faith. Plaintiffs are not attempting to enforce any legal or administrative remedy which the New York DMV or PennDOT may pursue. Rather, Plaintiffs and Class Members assert that, as a result of the underlying UCC deficiencies described herein, the Bank did not have the right to sell and/or transfer title to the repossessed vehicles and that such systematic certifications after these deceptive practices were instituted in a uniform manner by the Bank constituted an additional commercially unreasonable policy and practice.

**Unlicensed Repossession Brokers**

87. The Bank acted commercially unreasonable and in violation of its Obligation of Good Faith and/or 13 Pa. C.S. §9610 as to the subclass of the Pennsylvania Notice of Repossession Class Members by hiring at least one Repossession Broker, Millennium Capital Recovery

Corporation ("MCRC"), who was not licensed in Pennsylvania. Generally, a notation to MCRC is set-forth in the challenged Notices of Repossession.

**Other Statutes Violated**

88. The Bank has violated other statutes which are also commercially unreasonable practices, including as follows:

> **(a) NY Penal 175.35:** The Bank had an additional obligation to ensure that its certifications were truthful, and it violated NY Penal 175.35 (offering a false instrument for filing in the second degree) when it submitted false certifications to the New York DMV.
>
> **(b) 18 Pa. C.S.A. §4911(a)(1) and (2):** The Bank violated 18 Pa. C.S.A. §4911(a)(1) and (2) when it submitted false certifications to PennDOT.
>
> **(c) 12 U.S.C.A. §5536(a):** The Bank similarly failed to comply with 12 U.S.C.A. §5536(a) which provides "It shall be unlawful for...any covered person or service provider...to engage in any unfair, deceptive, or abusive act or practice." A "covered person" is, *inter alia*, any person [including the Bank] engaged in "collecting debt related to any consumer financial product or service." 12 U.S.C.A. § 5481(15)(A)(x), which includes the Bank.

**VII. DAMAGES**

**The UCC Provides for Actual or Minimum Statutory Damages**

89. N.Y. U.C.C. Law §9-625(c)(2) and 13 Pa.C.S. §9625(c)(2) allow consumer debtors such as Plaintiffs (and members of the putative class) to recover statutory damages of not less than the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed). These figures are readily determinable simply by a review of the Schumer Box of each Class Members' retail installment sales contract.

90. The Official Comments to the UCC are entitled to great weight under New York and Pennsylvania law. Comment 4 to N.Y. U.C.C. Law §9-625 and 13 Pa.C.S. §9625 makes clear that these statutory damages are intended to establish a secured party's liability for violations of,

*inter alia*, the notice provisions in consumer goods transactions, regardless of whether "actual damages" are greater, lesser, or even absent. That Comment states in pertinent part:

> 4. **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.

Official Comment to N.Y. U.C.C. Law §9-625(c)(2) and 13 Pa.C.S. §9625(c).

91.     N.Y. U.C.C. Law §9-625(b) and 13 Pa.C.S. §9625(b) allow for actual damages in the amount of any loss caused by failure to comply with Article 9.

92.     Plaintiffs and Class Members seek the greater of actual and minimum statutory damages pursuant to N.Y. U.C.C. Law §9-625(b) and (c)(2) and 13 Pa.C.S. §9625(b) and (c)(2) respectively. Duplicative damages are not sought.

93.     Plaintiffs also seek damages under 13 Pa.C.S. §9625(e)(5) which provides for $500 in statutory damages for each violation of 13 Pa.C.S. §9616.

## VIII. CLASS ALLEGATIONS

### Applicable Statute of Limitations

#### *New York*

94.     The New York Plaintiffs' claims are based on violations of Article 9 of the UCC, which does not state a statute of limitations. Such claims thus fall under NY CPLR 213, which mandates a 6-year statute of limitation for "an action for which no limitation is specifically prescribed by law."

#### *Pennsylvania*

95.     Pennsylvania has a 6-year statute of limitation for Article 9 UCC claims. *Cubler v. TruMark*, 83 A.3d 235 (2013). The Pennsylvania Plaintiffs' claims are tolled by the filing of a

complaint encompassing the some similar claims against Defendant on September 22, 2017 in *Flynn et al v. M&T Bank* in the Court of Common Pleas of Philadelphia Count, subsequently removed to 2:17-cv-04806-WB (E.D. Pa.).

**Class Definitions**

96. Plaintiffs propose a New York Notice of Repossession Class as: All debtors, obligors, and co-obligors:

(a) who entered into a retail installment sales contract for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; and,

(b) from whom the Bank, as secured party, repossessed the vehicle or ordered it to be repossessed;

(c) to whom the Bank sent a Notice of Repossession to a New York address;

(d) in the period commencing six years prior to the filing of this Complaint through the date of class certification; and,

(e) which included or a "Prepare/Repair Fee."

97. In the event that there is a question as to the statute of limitations for a UCC Article 9 claim in New York, then Plaintiffs request an alternative class defined exactly in the same manner described above -- one for six years prior to the filing date of this complaint ("6 Year Class") and another for 3 years prior to the filing of the complaint ("3 Year Class"). In an effort to avoid any potential conflict amongst class members in such an instance, Colleen Randolph and Ann Marie Boyce will represent the "6 Year Class" and "3 Year Class," respectively.

98. Plaintiffs propose a Pennsylvania Notice of Repossession Class, define as: All debtors, obligors, and co-obligors:

(a) who entered into a retail installment sales contract for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; and,

(b)     from whom the Bank, as secured party, repossessed the vehicle or
        ordered it to be repossessed; and,

(c)     to whom the Bank sent a Notice of Repossession to a Pennsylvania
        address at any time on or after September 22, 2011 through the date of
        class certification; and,

(d)     which included or a "Prepare/Repair Fee."

99.     Plaintiffs propose a "Pennsylvania Repossession Broker Subclass," defined as:

        All debtors, obligors, and co-obligors who are members of the Pennsylvania
        Notice of Repossession Class whose Notice of Repossession included a
        reference to "MCRC" or whose repossession was brokered or facilitated by
        Millennium Capital and Recovery Corporation.

100.    Plaintiffs propose a "Pennsylvania Post-Sale Notice Subclass" defined as: All

debtors, obligors, and co-obligors who are members of the Pennsylvania Notice of Repossession

Class :

(a)     who was a co-borrower on an account where one coborrower was not
        sent a separate, separately addressed Post-Sale Notice; or,

(b)     to whom the Bank sent or caused to be sent a Post-Sale Notice any time
        after December 1, 2014, which was not sent by registered or certified
        mail.

101.    Plaintiffs believe and therefore aver that there are thousands of members of these

classes. These classes are sufficiently numerous that joinder of all members would be impractical.

Fed.R.Civ.P. Rule 23(a)(1) is, therefore, satisfied.

102.    Questions of law which are common to all Plaintiffs and Class Members include

but are not limited to the following:

(a)     Whether the Bank repossessed or ordered to be repossessed Plaintiffs
        and Class Members' vehicles;

(b)     Whether the Bank employed form Notices of Repossession for the
        Plaintiffs and Class Members;

(c)     Whether MCRC held a license to broker repossessions in
        Pennsylvania at all times during the Pennsylvania Class Period;

(d)     Whether the subject Notices of Repossession complied with the UCC Independently and/or in *pari materia* with the MVSFA, MVRISA, and General Obligation Law, as applicable, in New York and Pennsylvania;

(e)     Whether the Post Sales Notices complied with the UCC, independely, and/or in *pari materia* with the MVSFA;

(f)     The minimum statutory UCC damages for the classes; and,

(g)     Whether the Bank is obligated to disgorge post-redemption or post-repossession payments it received.

103.     Questions of fact which are common to all Plaintiffs and Class Members include but are not limited to the following:

(a)     Whether each Class Member entered into a RISC in New York or Pennsylvania;

(b)     Whether each Class Member's RISC was assigned or sold to the Bank;

(c)     Whether the Bank repossessed the financed vehicle of each class member;

(d)     Whether, as a matter of policy and practice, the Bank actually incurred a Prepare/Repair Expense prior to the sending of the Notice of Repossession and in the amount listed in the Notice;

(e)     Whether, as a matter of policy and practice, the Bank placed storage charges on its Notices of Repossession that exceeded the storage expenses that it actually incurred.

(f)     Whether, as a matter of policy and practice, the Bank's Notices of Repossession failed to notify borrowers of the Administrative Fee, Personal Property Fee, or Redemption Fee.

104.     Plaintiffs are represented by counsel that is competent and experienced in both consumer protection law generally and class action litigation, specifically, having filed and certified these types of claims.

105.    The prosecution of several separate actions by the members of the classes would, as a practical matter, create a risk of inconsistent or varying adjudications, leaving the Bank with inconsistent standards for the conduct required of it. A class action, in contrast, will serve the goal of judicial economy and ensure uniformity of result.

106.    Concomitantly adjudicating individual claims would create the possibility that a single such adjudication would effectively be dispositive of the claims of individuals that are not parties to such adjudication.

107.    The Bank has acted on grounds generally applicable to the all the members of all the classes, thereby making appropriate injunctive or declaratory relief on behalf of the class if such becomes necessary.

108.    The above-enumerated questions of law and fact common to the classes and the subclasses predominate over any questions affecting only individual members.

109.    A class action is clearly superior to other methods of adjudication for fairly and efficiently adjudicating the similar claims of hundreds of individuals.

110.    Plaintiffs are not aware of any class members being interested in prosecuting separate actions other than as set forth in the pending *Flynn* case. To the extent that any such individuals exist, they have the option of excluding themselves from the class.

111.    Neither the size of the class nor the complexity of the issues suggests that there would be any particular problems managing this class action.


End of Page

## IX. CLAIMS

### COUNT 1
### UCC
### New York Notice of Repossession Class

112.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

113.    The Bank systematically:

    a.   Improperly sent or caused to be sent Notices of Repossession to Plaintiffs and Class Members which included an itemization for "expenses" not actually paid or incurred by the Bank, not permitted by statute, and/or not permitted by the retail installment sales contract;

    b.   Improperly assessed and/or failed to notify Plaintiffs and Class Members of fees which it permitted and/or facilitated third parties to assess against its borrowers who elected to redeem their vehicle, to reinstate their contract, and/or to re-gain access to their personal possessions left in the repossessed vehicle. These improper fees entailed a Personal Property Fee, a Redemption Fee, and/or an Administrative Fee – all fees which the Bank did not incur nor would occur in its ordinary course of business; and/or,

    c.   Failed to properly disclose the Redemption Amount and/or accurately disclose an accurate description of liability of a deficiency balance in violation of statutes and it's the retail installment sales contracts.

114.    These acts violated the NY UCC §§9-614(a)(2), 9-615(a)(1), and/or 9-623.

115.    The above statutory violations were also violations of M&T's Obligation of Good faith and were also commercially unreasonable in violation of N.Y. U.C.C. Law §9-610(b).

116.    M&T further violated its Obligation of Good Faith and acted commercially unreasonable in violation of N.Y. U.C.C. Law §9-610(b) by the acts and omissions set forth above, including making false certifications on motor vehicle retitling forms, engaging in unfair, deceptive, and/or abusive acts and practices, and breaching retail installment agreements it entered into with Plaintiffs Randolph and Boyce and other New York Class Members.

**COUNT 2**
**UCC, MVRISA, and General Obligation Law in *pari materia***
**New York Notice of Repossession Class**

117. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

118. The Bank systematically:

a. Improperly sent or caused to be sent Notices of Repossession to Plaintiffs and Class Members which included an itemization for "expenses" not actually paid or incurred by the Bank, not permitted by statute, and/or not permitted by the retail installment sales contract;

b. Improperly assessed and/or failed to notify Plaintiffs and Class Members of fees which it permitted and/or facilitated third parties to assess against its borrowers who elected to redeem their vehicle, to reinstate their contract, and/or to re-gain access to their personal possessions left in the repossessed vehicle. These improper fees entailed a Personal Property Fee, a Redemption Fee, and/or an Administrative Fee – all fees which the Bank did not incur nor would occur in its ordinary course of business; and/or,

c. Failed to properly disclose the Redemption Amount and/or accurately disclose an accurate description of liability of a deficiency balance in violation of statutes and it's the retail installment sales contracts;

119. These acts violated the NY UCC §§9-614(a)(2), 9-615(a)(1), and/or 9-623, independently, and/or in *pari-materia* with the NY MVRISA (Pers. Prop. Law) § 316 and NY. Gen. Obl. Law §7-401(2) and/or retail installment sales contracts it entered into with Plaintiffs Boyce and Randolph other New York Class Members.

**COUNT 3**
**UCC**
**Pennsylvania Notice of Repossession Class**

120. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

121. The Bank systematically:

a. Improperly sent or caused to be sent Notices of Repossession to Plaintiffs and Class Members which included an itemization for "expenses" not actually paid or incurred by the Bank, not permitted by statute, and/or not permitted by the retail installment sales contract;

b. Improperly assessed and/or failed to notify Plaintiffs and Class Members of fees which it permitted and/or facilitated third parties to assess against its borrowers who elected to redeem their vehicle, to reinstate their contract, and/or to re-gain access to their personal possessions left in the repossessed vehicle. These improper fees entailed a Personal Property Fee, a Redemption Fee, and/or an Administrative Fee – all fees which the Bank did not incur nor would occur in its ordinary course of business; and/or,

c. Failed to properly disclose the Redemption Amount and/or accurately disclose an accurate description of liability of a deficiency balance in violation of statutes and it's the retail installment sales contracts;

122. These acts violated the Pennsylvania UCC 13 Pa.C.S. §§9614(1)(ii), 9615(a)(1), and/or 9623, independently, and/or in violation of M&T's Obligation of Good faith and were also commercially unreasonable in violation of 13 Pa. C.S §9610(b) by the acts and omissions set forth above, including making false certifications on motor vehicle retitling forms, engaging in unfair, deceptive, and/or abusive acts and practices, and breaching retail installment agreements it entered into with Plaintiffs Percy and Janene Chapman other Pennsylvania Class Members.

**COUNT 4**
**UCC and MVSFA in *pari materia***
**Pennsylvania Notice of Repossession Class**

123. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

124. The Bank systematically:

a. Improperly sent or caused to be sent Notices of Repossession to Plaintiffs and Class Members which included an itemization for "expenses" not actually paid or incurred by the Bank, not permitted by statute, and/or not permitted by the retail installment sales contract;

b. Improperly assesses and/or failed to notify Plaintiffs and Class Members of fees which it permitted and/or facilitated third parties to assess against its borrowers who elected to redeem their vehicle, to reinstate their contract, and/or to re-gain access to their personal possessions left in the repossessed vehicle. These improper fees entailed a Personal Property Fee, a Redemption Fee, and/or an Administrative Fee – all fees which the Bank did not incur nor would occur in its ordinary course of business; and/or,

c. Failed to properly disclose the Redemption Amount and/or accurately disclose an accurate description of liability of a deficiency balance in violation of statutes and it's the retail installment sales contracts;

125. These acts violated the Pennsylvania UCC - 13 Pa.C.S. §§9614(1)(ii), 9615(a)(1), and 9623 in *pari materia* with the MVSFA [12 Pa.C.S. §6254(c)(2)], the retail instalment contracts entered into by Chapmans and other Pennsylvania Class Members, and was otherwise commercially unreasonable.

**<u>COUNT 5</u>**
**UCC/UCC and MVSFA in *pari materia***
**Pennsylvania Post-Sale Notice Subclass**

126. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

127. At all relevant times, as part of a pattern or consistent with a practice of noncompliance that was not commercially reasonable, the Bank's conduct as set forth above, included sending non-compliant notices as described above and/or failing to send any Post-Sale Notice at all to a borrower or to one or both co-borrowers, in violation of 13 Pa.C.S. §9616.

128. The Bank failed to send the Post-Sale Notices in person or by registered or certified mail, in violation of 12 Pa.C.S. §6261(d) (for notices sent after December 1, 2014).

129. The Bank's failure to send the Post-Sale Notices as required by the MVSFA, and the UCC and MVSFA, the retail instalment contracts entered into by Chapmans and other Pennsylvania Class Members, and was otherwise commercially unreasonable.

**COUNT 6**
**UCC/UCC and MVSFA in *pari materia***
**Pennsylvania Unlicensed Repossession Broker Subclass**

130. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

131. The Bank's use of MCRC to broker some of its repossessions in Pennsylvania when MCRC was not licensed to engage in such commerce in Pennsylvania, including failing to procure a Collector/Repossessor license pursuant to 12 Pa. C.S. §§6202 and 6211(a), as incorporated.

132. The Bank's use of unlicensed repossessor/collector broker(s), including MCRC, violated the MVSFA and the UCC in *pari materia*, the retail instalment contracts entered into by Chapmans and other Pennsylvania Class Members, and was otherwise commercially unreasonable.

WHEREFORE, Plaintiffs, individually and on behalf of these putative classes, request that this Honorable Court grant the following relief as against the Bank jointly and severally as follows:

A. Certify the requested classes and appoint the undersigned as class counsel.

B. Monetary Damages

1. Award the greater of actual *or* minimum statutory compensatory damages as provided by N.Y. U.C.C. Law §9-625(b) and (c)(2) to each member of the New York Notice of Repossession Class; and

2. Award the greater of actual *or* minimum statutory compensatory damages as provided by 13 Pa.C.S. §9625(b) and (c)(2) to each member of the Pennsylvania Notice of Repossession Class, the Post-Sale Notice Class, and the Repossession Broker Subclass; and,

3. Award $500.00 plus minimum statutory damages to each member of the Pennsylvania Post-Sale Notice Subclass;

C. Declaratory Relief

1. Declare that the practices complained of were not commercially reasonable pursuant to N.Y. U.C.C. Law §9-610(b) and 13 Pa.C.S. 9610(b) respectively, and/or violated N.Y. U.C.C. Law §§9-614, 9-615, and 9-623 and 13 Pa.C.S. §§9614, 9615, 9616, and 9623, individually and in *pari materia* with the MVRISA, General Obligation Law, and/or MVSFA, respectively;

2. Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and cannot be collected, as a matter of law; and,

3. Declare that any loan by which a Class Member borrowed funds to refinance a disputed deficiency balance is null and void and cannot be collected, as a matter of law.

D. Injunctive and Equitable Relief

1. Pursuant to N.Y. U.C.C. Law §9-625(a) and 13 Pa. C.S. §9625(a), impose a constructive trust on all ill-gotten proceeds; order an accounting of all such proceeds, and their expedited return, with interest, by ordering the Bank to disgorge all moneys received from any Class Member as a payment towards a disputed deficiency claim or as a payment towards a loan to the extent that such loan refinanced a disputed deficiency claim;

2. Enjoin the collection of any invalid and disputed deficiency balance as permitted by N.Y. U.C.C. Law §9-625(a) and 13 Pa.C.S. §9625(a);

3. Temporarily and/or permanently enjoin:

(a) The use of all statutorily non-compliant notices;
(b) The imposition of the unlawful storage fees;
(c) The imposition of sale preparation/repair fees;
(d) The imposition of other undisclosed and/or illegal fees or expenses incident to the sale, repossession, and/or reinstatement of class members' loans and/or the redemption of their repossessed vehicles; and,

4. Order the Bank to remove the Bank's negative trade line for all Class Members.

5. Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*
*Admitted Pro-Hac Vice*